UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re ANDREA LEVASSEUR,           )
                                  )
          Debtor.                 )
                                  )
--------------------------        )
                                  )
OLD REPUBLIC NATIONAL TITLE       )      CIVIL ACTION NO.
INSURANCE COMPANY,                )      12-12414-DPW
                                  )
          Plaintiff/Appellee,     )      BANKRUPTCY COURT NO.
                                  )      07-18259-FJB
     v.                           )
                                  )      ADVERSARY PROCEEDING NO.
ANDREA LEVASSEUR,                 )      08-01229-FJB
                                  )
          Defendant/Appellant.    )

MEMORANDUM AND ORDER
June 3, 2013

     Andrea Levasseur appeals the bankruptcy court's
determination that her debt to Old Republic National Title
Insurance Company was not dischargeable in bankruptcy, because it
was money obtained by false pretenses, 11 U.S.C. § 523(a)(2)(A),
and alternatively it was a debt arising from willful and
malicious injury, 11 U.S.C. § 523(a)(6).

**I. BACKGROUND**

     Andrea Levasseur was born in 1964.  Over the course of her
career, she has worked as both a registered nurse and a part-time
real estate agent.  By virtue of her first marriage in 1991, she
went by the name of Andrea Sullivan, until her second marriage in

-1-

October 2003.  In connection with the divorce from her first husband, Lavasseur became the sole owner of a home on Wethersfield Street in Rowley, Massachusetts (the "Rowley property").  The property was subject to a mortgage that had been refinanced a number of times.

On March 14, 2003, Levasseur (then, Sullivan) obtained from Fleet Bank a home equity line of credit, secured by a second mortgage on the Rowley property.  Fleet opened a home equity account (No. 75620043059124) and a checking account (No. 9467788365), both in the name Andrea Sullivan.  Fleet also provided a starter check booklet to allow Levasseur to draw on her available credit.  The credit limit was $124,200, which reflected the value of the Rowley property less the amount already loaned against the property under the first mortgage.

In June 2003, Levasseur became the sole owner of another home, this one on Fatherland Drive in Byfield, Massachusetts (the "Byfield property").  She began living at the Byfield property immediately, and notified Fleet of her change of address. Thereafter, on November 14, 2003, Levasseur sold the Rowley property and fully paid off both mortgages on the Rowley property.  As relevant here, a United States Department of Housing and Urban Development HUD-1 settlement statement reflects a payment to Fleet for a "Payoff" in the amount of $126,577.27.

Fleet, however, inadvertently failed to record discharge of the home equity mortgage on the Rowley property and failed to close the home equity line of credit.  Levasseur thus continued to receive at the Byfield property periodic statements from Fleet or Bank of America, Fleet's successor by merger.  One statement produced by Levasseur, for a billing period closing on September 3, 2004, is representative.  The statement is addressed to "Andrea P. Sullivan."  In two places, the statement indicates that it pertains to account number 75620043059124, the number of the Fleet home equity account.  The statement also bears the words "CREDIT LINE" and states that both the "credit limit" and "available credit" are $124,200.

Levasseur, however, never tried to draw on the credit line until June 2005, when her husband's business was in financial distress and her family was having trouble paying its bills.  On June 15, 2005, Levasseur made a $50,000 check payable to "Andrea P. Sullivan" using one of the Fleet starter checks issued in connection with her Fleet checking account.  In the memo line, she wrote "75620043059124," which, again, was the number of the Fleet home equity account.  Levasseur deposited the check in a Georgetown Savings Bank account she maintained with her husband.

Then, on June 16, 2005, Levasseur obtained an official check from Bank of America's Newburyport branch--where she had obtained the second mortgage on the Rowley property from Bank of America's

-3-

predecessor Fleet Bank--in the amount of $100,000, which she also
deposited in her Georgetown Savings account.  The June 15 and 16
transactions plainly exceeded the $124,200 credit limit on the
account.  Thus, unsurprisingly, the prior $50,000 check was
returned on June 21, 2005, for nonsufficient funds.  But,
undeterred, Levasseur returned to the Newburyport branch on July
19, 2005, to obtain a cashier's check for $24,200, which she
successfully deposited in her Georgetown Savings account.

The details of Levasseur's trips to the Newburyport branch
are not entirely clear.  She testified that at one point she
asked a teller if "this was an account that I could use, and--and
I--I believe she said yes."  The bankruptcy court refused to
credit this testimony due to Levasseur's lack of specificity and
earlier testimony that she had little or no memory of the
details.  In any event, the Bank of America employees could not
determine from their computers and available records that the
home equity line had been closed.  Levasseur never offered that
information, nor did she indicate that she had sold the Rowley
property.

The bankruptcy court provided additional detail regarding
Levasseur's financial situation, but it suffices here to say that
she failed to make payments on the $124,200 drawn from the home
equity account.  Bank of America thus commenced foreclosure
proceedings against the Rowley property.  The new owners of the

-4-

Rowley property were insured by Old Republic National Title Insurance Company, which paid Bank of America the amount owed by Levasseur in order to prevent foreclosure.  Bank of America thereafter assigned all its rights against Levassuer to Old Republic.

In October 2006, Old Republic brought suit against Levasseur in Essex County Superior Court.  After Levasseur failed to file an answer or otherwise defend against the suit, a default judgment entered on May 23, 2007.  When Levasseur failed to satisfy an initial execution of judgment the court issued an alias execution on September 12, 2007, in the amount of $159,845.95 plus postjudgment interest at 12% per annum.

On December 31, 2007, Levasseur filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code, which was converted to a Chapter 7 proceeding on February 4, 2008.  Old Republic initiated an adversary proceeding on August 29, 2008, seeking a determination that the pre-petition judgment against Levasseur was excepted from discharge as a debt for fraud, false pretenses or misrepresentation, 11 U.S.C. § 523(a)(2), larceny, *id*. § 523(a)(4), and willful and malicious injury, *id*. § 523(a)(6).  In an October 29, 2012 memorandum, the bankruptcy court agreed as to the use of false pretenses and the infliction of willful and malicious injury, and thus found the debt

nondiscargheable.  *In re Levasseur*, 482 B.R. 15 (Bankr. D. Mass. 2012).

The bankruptcy court entered judgment for Old Republic on November 1, 2012.  Levasseur timely appealed.  I review the bankruptcy court's findings of fact for clear error, its legal conclusions *de novo*, and its discretionary decisions for abuse of discretion.  *Palmacci* v. *Umpierrez*, 121 F.3d 781, 785 (1st Cir. 1997); *In re Gonic Realty Trust*, 909 F.2d 624, 626 (1st Cir. 1990).

## II. ANALYSIS

### A.   *No Clear Error in Findings of Fact*

As an initial matter, I find no clear error in the bankruptcy court's basic findings of fact.  Levasseur admits most of the relevant facts, although she challenges the inferences that may properly be drawn from those facts.

To the extent there are purely factual disputes, they involve the findings of the bankruptcy court that appear to have been based on the proposed facts submitted by Old Republic below--for example, facts involving the limited information available to employees at the Bank of America Newburyport branch.  The bankruptcy court accepted the validity of Old Republic's proposed facts as a sanction for Lavasseur's failure to make pre-trial filings as ordered by the court, and failure to oppose plaintiff's proposed facts.  *Old Repub. Nat'l Title Ins. Co.* v.

*Levasseur*, No. 08-01229-FJB, Order (Bankr. D. Mass. Sept. 10, 2010).

Levasseur waived any objection to the sanction by failing to raise the issue in her opening brief on appeal. *Contour Design, Inc.* v. *Chance Mold Steel Co.*, 693 F.3d 102, 106 n.3 (1st Cir. 2012).  Even absent waiver, however, I find no error.  My review of the bankruptcy court's imposition of the sanction is only for abuse of discretion. *In re Jamo*, 283 F.3d 392, 403 (1st Cir. 2002); *Beal Bank, S.S.B.* v. *Waters Edge Ltd. P'ship*, 248 B.R. 668, 692 (D. Mass. 2000).  The sanction at issue was akin to the sanction imposed automatically by this court's local rules in the summary judgment context, whereby statements of material fact uncontroverted by the opposing party are deemed admitted. *See* D. Mass. L. R. 56.1.  Acceptance of the plaintiff's proposed facts was an appropriate sanction for Levasseur's failure to oppose those facts within the timeframe established by the court, and even more appropriate in light of the additional failure to supply other pre-trial filings ordered by the court.  Moreover, the stipulated facts did not prevent Levasseur from pursuing her core defense at trial--namely, that she lacked the requisite scienter for the debt to have been the product of false pretenses, fraud, or willful and malicious behavior.

**B.    *False Pretenses***

In order to establish the debt as nondischargeable under 11

U.S.C. § 523(a)(2)(A), Old Republic needed to prove that
Levasseur employed false pretenses with fraudulent intent or
"scienter" and with the intent to induce the Bank of America to
rely on her false pretenses; those false pretenses must have in
fact induced justifiable reliance and caused pecuniary loss. *See
Palmacci* v. *Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997); *In re
Moen*, 238 B.R. 785, 790-91 (B.A.P. 8th Cir. 1999). For
convenience, and consistent with the issues primarily disputed by
the parties, I first address the question of false pretenses and
the issue of scienter. I then turn to the remaining elements,
which require considerably less attention.

    1.  <u>False Pretenses & Scienter</u>

A false pretense "involves implied misrepresentation or
conduct intended to create and foster a false impression." *In re
Guy*, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988). False pretenses
can be created by silence, for example "when the circumstances
imply a particular set of facts, and one party knows the facts to
be otherwise." *In re Moen*, 238 B.R. at 791 (internal citation
omitted). Under such circumstances, the party remaining silent
"may have a duty to correct what would otherwise be a false
impression." *Id.; see also id.* (a "borrower has the duty to
divulge all material facts to the lender" (internal quotation and
citation omitted)).

Levasseur's attempts to draw on the home equity account

-8-

implied a right and ability to do so.  *In re Moen*, 238 B.R. at
793.  Accordingly, if Levasseur knew she was trying to draw on a
closed account, her failure to disclose that the account was
closed or at least that she had sold the Rowley property
constituted false pretenses.  The use of false pretenses and the
existence of scienter are thus effectively coextensive in this
case, because scienter is established where the maker of a
misrepresentation "knows or believes that the matter is not as
[s]he represents it to be."  *Palmacci*, 121 F.3d at 787.  The
bankruptcy court properly found both false pretenses and scienter
based on facts permitting the inference that Levasseur knew she
was trying to draw on the closed Fleet home equity account.

In response to plaintiff's request for admissions, Levasseur
admitted that she understood the proceeds from the sale of the
Rowley property would be used to pay off the Fleet home equity
account in full, and that the home equity account would no longer
be available for use if she sold the Rowley property.  Thus she
could not argue that she thought the home equity line of credit
remained available after the sale.  Instead, Levasseur said she
thought she was drawing on some new line of credit from Bank of
America.  Given that Levasseur did not receive another home
equity line of credit from Fleet, or give Fleet or Bank of
America a mortgage on the Byfield property, she necessarily
assumed the "new" Bank of America credit line was unsecured.

Levasseur's explanation was wholly implausible.  She never applied for a new line of credit from or opened a bank account with Bank of America.  Moreover, Levasseur admitted to understanding the concept of equity and home equity credit.  She understood that the home equity agreement with Fleet was an agreement to borrow against the equity she had in the Rowley property--specifically, the value of the property less the amount that was already loaned against the property from an existing mortgage.  From these facts alone, it was reasonable for the bankruptcy court to infer that Levasseur knew she was not drawing on a new line of credit that just happened to be in the same amount as her previous home equity line of credit and that Bank of America was willing to provide it on an unsecured basis.

The case, however, could begin and end with Levasseur's use on June 15, 2005, of one of her Fleet starter checks, on which she wrote the Fleet home equity account number.  There is only one reasonable inference to be drawn from these actions: that Levasseur was knowingly trying to draw on the home equity line of that had been secured by the Rowley property.  The use of the starter check and deployment of the home equity account number renders completely incredible Levasseur's defense that she was drawing on some new line of unsecured credit.  The bankruptcy court properly concluded, then, that Levasseur drew money from

the home equity account under false pretenses and with fraudulent
intent.

### 2.   Intent to Induce Reliance

Little more needs to be said to establish Levasseur's intent
to induce reliance.  Although Levasseur knew the Fleet home
equity account was closed, she was also constructively aware of
the error in Bank of America's records based on her continued
receipt of account statements and the apparent ignorance of the
employees at the Newburyport branch as to the true status of the
account.  The bankruptcy court reasonably inferred that Levasseur
"did not alert the bank to what [s]he knew to be an error because
[s]he planned to use the error to h[er] advantage."  *In re Moen*,
238 B.R. at 793.

### 3.   Justifiable Reliance

It is also clear that Bank of America relied on Levasseur's
implied representation of her right and ability to draw on the
home equity account.  Moreover, that reliance was justifiable.
"The element of justifiable reliance is less exacting than the
concept of reasonable reliance, and reliance is considered
justifiable if the falsity of the representation would not have
been readily apparent to the person to whom it was made."  *In re
Grenier*, Bnkr. No. 06-14825, Adversary No. 07-1131, 2009 WL
763352, at *9 (Bankr. D. Mass. Mar. 19, 2009) (citing *Field* v.
*Mans*, 516 U.S. 59 (1995)).  Given the (inaccurate) records

available to Bank of America and the employees at the Newburyport branch, it was not readily apparent to the responsible Bank employees that the Rowley property had been sold or that the home equity account was closed.

That Bank of America's own negligent record-keeping contributed to the success of Levasseur's misrepresentation also does not mean that the Bank's reliance was not justifiable. Because the standard for justifiable reliance is "relatively low," the "creditor need not prove that he acted consistent with ordinary prudence and care . . . [and] a party may justifiably rely on a misrepresentation even when he could have ascertained its falsity by conducting an investigation." *In re Aoki*, 323 B.R. 803, 816 (B.A.P. 1st Cir. 2005). Rather, after "cursory examination or investigation" failed to reveal that the home equity account was closed, nothing further was required to establish justifiable reliance by the Bank, even though it "could [have] ascertain[ed] the inaccuracy of the representation by checking public records" reflecting, for example, the sale of the Rowley property. *In re Grenier*, 2009 WL 763352, at *9. In light of the existing relationship between Levasseur and the Bank, the Bank was entitled to rely on Levasseur's implied representations "unless there were warning signs of their falsity." *Sanford Inst. for Sav.* v. *Gallo*, 156 F.3d 71, 75 (1st Cir. 1998). No

-12-

such warning signs appear in the record before the bankruptcy
court.

####    4.   Pecuniary Loss

Finally, there is no dispute that as a result of Levasseur's
false pretenses Bank of America suffered damages, which fell to
Old Republic as title insurer to the new owners of the Rowley
property when Bank of America foreclosed on the property.

####    5.   Conclusion

The bankruptcy court thus properly concluded that Levasseur
obtained money from Bank of America under false pretenses and
thus properly found Levasseur's derivative debt to Old Republic
nondischargeable under 11 U.S.C. § 523(a)(2)(A).

### C.   *Willful and Malicious Injury*

Although it is of little additional consequence given my
affirmance of the determination of nondischargeability for false
pretenses under 11 U.S.C. § 523(a)(2)(A), I also find the
bankruptcy court properly concluded that Levasseur's debt was
nondischargeable as a debt for willful and malicious injury.  11
U.S.C. § 523(a)(6).

Bank of America was injured when Levasseur obtained funds in
a manner inconsistent with the earlier Fleet home equity line
agreement and thus inconsistent with the Bank's right to those
funds.  *In re Little*, 335 B.R. 376, 384 (Bankr. N.D. Ohio 2005)
(under § 523(a)(6), the "injury sustained must be an invasion of

the creditor's legal rights," which may include "injury to intangible personal or property rights" (internal quotation and citation omitted)).  Levasseur also intended to inflict the injury, *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), as the bankruptcy court could properly infer from her apparent need for cash and the fact that she was aware she could exploit Bank of America's error regarding the status of the home equity account.  Finally, the injury was also malicious, in that it was "wrongful and without just cause or excuse."  *Printy* v. *Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir. 1997); *see also In re McKnew*, 270 B.R. 593, 640 (Bankr. E.D. Va. 2001) (malice inquiry involves "whether debtor acted deliberately in knowing disregard of a creditor's rights in property").

The elements of willful and malicious injury are thus present here.  But I recognize the potential anomaly of applying § 523(a)(6) for willful and malicious injury when the more specific provisions of § 523(a)(2)(A) for false pretenses apply.  Hewing to the general rule that "when both a specific and a general provision govern a situation, the specific one controls," the Seventh Circuit has refused to apply § 523(a)(6) when doing so might circumvent a more specific provision regarding dischargeability in cases related to fraud.  *In re Gulevsky*, 362 F.3d 961, 963-64 (7th Cir. 2004) (finding that debt obtained by false oral statement of financial condition dischargeable under § 523(a)(2)(B) could not be deemed nondischargeable under

-14-

§ 523(a)(6)); *see generally id.* ("§ 523(a)(6) cannot make all debts procured by fraud nondischargeable, because that would make superfluous § 523(a)(2), § 523(a)(4), and § 523(a)(11), all of which make different sorts of debts procured by fraud nondischargeable.").

The First Circuit, however, has expressly held that "sections 523(a)(2)(A) and (a)(6) are not mutually exclusive," *Printy*, 110 F.3d at 858, and, in any event, this case does not present concerns about undue distortion of the separate provisions of § 523.  The bankruptcy court properly found that § 523(a)(6) applied to render nondischargeable Levasseur's debt to Old Republic under circumstances that also separately render her debt nondischargeable under § 523(a)(2)(A).

### III. CONCLUSION

For the reasons set forth more fully above, the judgment of the bankruptcy court is AFFIRMED.


_
***/s/ Douglas P. Woodlock***
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE